UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION
CASE NO. _____

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

11 SEP -6 PM 3: 52

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

**RYAN ROBERTS**
5524 Randy Drive
Fairfield, Ohio 45014,

      Plaintiff,

Vs.

**1 :11 -cv- 1 2 0 2 JMS -DKL**

**BELTERRA RESORT INDIANA, LLC**
**d/b/a Belterra Casino and Resort**
Serve: Agent for Service of Process
CT Corporation System
251 East Ohio Street, Suite 1100
Indianapolis, Indiana 46204,

      Defendant

### COMPLAINT AND JURY DEMAND

Now comes the Plaintiff, Ryan Roberts, by and through counsel, and for his Complaint against Defendant, Belterra Resort Indiana, LLC, states as follows:

#### PARTIES

1.    Plaintiff, Ryan Roberts, is an individual citizen of the State of Ohio.

2.    Defendant, Belterra Resort Indiana, LLC is a limited liability company organized and existing under the laws of the State of Nevada and which maintains its principle place of business in Florence, Indiana.

## JURISDICTION AND VENUE

3. Plaintiff brings this Complaint under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*

4. With respect to Plaintiff's claims under the ADA, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received his Notice of Right to Sue. Plaintiff has initiated this action under the ADA within the time allowed under the ADA and the Notice of Right to Sue.

5. This Court has jurisdiction over the claims set forth in Counts One and Two pursuant to 28 U.S.C. § 1331, in that the claims arise under federal law. This Court has supplemental jurisdiction over Count Three pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

6. Plaintiff, Ryan Roberts, commenced employment with Defendant, Belterra in 2007.

7. Plaintiff suffers from muscular dystrophy and, as a result, is substantially impaired in this ability to walk, to get up from a seated position, to lift his arms, and engage in other activities which require muscle strength. Despite said physical condition, Plaintiff was physically able to perform the essential duties of his job with Defendant.

8. Because of his muscular dystrophy, Plaintiff was required to take leave under the FMLA on an intermittent basis.

9. Plaintiff supplied to Defendant any and all documents needed to justify his need for FMLA leave and, further, supplied to Defendant any and all documents requested by Defendant pertaining to his need for intermittent FMLA leave.

10. Initially, Defendant's Human Resources Department informed Plaintiff that he needed to supply papers documenting his need for FMLA leave every three (3) months. Thereafter, Defendant's Human Resources Department informed Plaintiff that he need supply the documentation supporting the need for FMLA leave every six (6) months because it was obvious that Plaintiff's physical condition would not change. Defendant represented to Plaintiff that it would remind him when follow up documentation was needed to renew his FMLA eligibility.

11. Plaintiff was, due to his physical condition, required to take intermittent FMLA leave.

12. Defendant represented to Plaintiff that he was eligible for such leave and never informed Plaintiff, prior to the taking of any FMLA leave, that he was no longer eligible for FMLA leave.

13. Defendant uses a "point system" for attendance, whereby an employee accumulates points for absences and tardies and the employee will be terminated at nine (9) points.

14. Absences and tardies resulting from an FMLA eligible leave are not supposed to be counted toward the points under the point system and should not, therefore, be considered in determining whether the employee has accumulated nine (9) points. Defendant, nonetheless, assessed Plaintiff with points toward termination for absences resulting from his FMLA approved intermittent leave. Defendant informed Plaintiff that he must notify it of any potential tardies two (2) hours prior to the scheduled start of his shift or obtain a written excuse from his doctor authorizing him to be late to work. Said instruction was impossible to comply with, however, because Plaintiff could not know two (2) hours prior to his shift if the ramp would be too steep or whether he would have other difficulty getting into the workplace.

15. Due to his disability, Plaintiff had difficulty getting in and out of the place of employment. Defendant's business is operated on a large river boat. Employees and customers are compelled to traverse a ramp in order to enter into the premises. Depending on the river level, the ramp's steepness varied and it was frequently too steep for Plaintiff to navigate up the ramp without assistance. Plaintiff asked Defendant to place handrails on the ramp to enable him to enter the premises without assistance or to provide him with assistance in getting up the ramp. Defendant refused to provide handrails and refused to provide assistance in getting up the ramp on regular basis, resulting in Plaintiff often being late for work and accumulating points for being late. The employee entrance was very unstable and the transition from boat to land was not safe or smooth. Plaintiff fell on several occasions when trying to use this entrance.

16. Additionally, the area reserved for employee parking was a considerable distance from the work premises. Plaintiff, therefore, requested that he be afforded handicapped parking in a closer parking lot and/or that he be afforded assistance in getting into the work premises. Defendant refused to provide such assistance, although spaces in said parking lot were reserved for the Employee of the Month and members in the Indiana Gaming Commission.

17. Although Defendant refused to provide any accommodation to assist Plaintiff in getting into the work premises, Defendant assessed points against Plaintiff for tardies and absences resulting from his inability to get into the premises. On one occasion, Plaintiff was compelled to wait over thirty (30) minutes while waiting for wheelchair assistance.

18. On or about January 2010, Defendant represented to Plaintiff that he was to be terminated because he had accumulated in excess of nine (9) points. Plaintiff protested this decision, asserting that many of the points assessed pertained to FMLA absences and/or tardies resulting from his inability to navigate his way from the distant parking lot and up the steep

ramp, which tardies were directly attributable to Defendant's refusal to accommodate Plaintiff's disability.

19. In early 2010, Defendant agreed to lower Plaintiff's point total to 7.5. Had Defendant removed all points resulting from FMLA and/or ADA attendance issues, Plaintiff would have been at no more than five (5) points. Plaintiff was also informed at that time that he would no longer be allowed FMLA Leave. Plaintiff missed work on February 6, 2010, raising his points total to 8.5.

20. On February 15, 2010, Plaintiff attempted to drive to work at Belterra. On the way to work, Plaintiff was involved in a motor vehicle accident when his automobile slid off the road during a level three (3) snow storm. Plaintiff's vehicle had to be dragged out of a ditch and he then went on to work, arriving forty five (45) minutes late.

21. Numerous other people were late for work and/or failed to make it in to work at all on February 15, 2010 due to the weather conditions. February 15, 2010 was designated as "black out" day, so that absence would count as double points. Defendant initially assessed two (2) points against every person who was absent or late that day. Defendant, however, observed that numerous employees would be terminated if two (2) points were assessed and, therefore, decided to assess only one (1) point for absences and tardies from this date. As a result, Plaintiff, upon information and belief, was the only employee who ended up with more than nine (9) points as a result of attendance problems on February 15, 2010. Had Belterra not counted absences and tardies resulting from FMLA and/or ADA issues, Plaintiff still would have had less than nine (9) points.

22. Defendant terminated Plaintiff's employment on February 25, 2010.

## COUNT ONE

23.     Plaintiff incorporates herein, as if fully set forth, paragraphs 1 through 22 of this Complaint.

24.     At all times relevant hereto, Defendant was a covered employer under the FMLA.

25.     At all times relevant hereto, Plaintiff was a covered employee under the FMLA. In the year preceding February 15, 2010 and/or all other FMLA leaves taken by Plaintiff, Plaintiff had worked more than 1,250 hours for Defendant and had been employed by said Defendant for more than one (1) year. Defendant did not advise Plaintiff prior to taking FMLA leave.

26.     The health condition resulting in Plaintiff's intermittent absences prior to his discharge from employmentwas a serious health condition within the meaning of the FMLA.

27.     Defendant interfered with Plaintiff's use of FMLA leave by terminating him for taking approved FMLA leave, by assessing points against him for FMLA approved absences and by refusing to reinstate him following the conclusion of said FMLA leave.

28.     Defendant, further, retaliated against Plaintiff for taking FMLA leave by terminating his employment, by assessing points against him for FMLA approved absences and refusing to reinstate him following the conclusion of said FMLA leave.

29.     As a result thereof, Plaintiff is entitled to recover his lost wages and employment benefits and any other compensation lost as a result of the violations of the FMLA and is entitled to his attorney's fees, costs reinstatement and other equitable relief pursuant to 29 U.S.C. § 2617(a).

30. Moreover, Defendant's actions were not undertaken in good faith and Defendant had no reasonable grounds to believe its conduct was in compliance with the FMLA, authorizing the imposition of liquidated damages under 29 U.S.C. § 2617.

## COUNT TWO

31. Plaintiff incorporates herein, as if fully set forth, paragraphs 1 through 30 of this Complaint.

32. Plaintiff's medical condition qualifies as a "disability" within the meaning of the ADA.

33. Defendant discriminated against Plaintiff on the basis of his disability by failing to provide reasonable accommodation to his disability. Defendant refused to provide Plaintiff assistance getting into the work premises, assessed points against him for being tardy when such tardies resulted from the denial of requested accommodations, refused to provide extended leave for Plaintiff for absences resulting from his disability, and, further, Defendant failed to honor Plaintiff's request for leave, terminating Plaintiff for taking leave.

34. As a result thereof, Plaintiff has suffered loss of income and benefits and has suffered severe emotional distress.

35. As a result thereof, Plaintiff is entitled to damages as herinabove set forth.

## COUNT THREE

36. Plaintiff incorporates herein, as if fully set forth, paragraphs 1 through 35 of this Complaint.

37. Defendant affirmatively represented to Plaintiff that his intermittent leave was approved leave under the FMLA.

38. Plaintiff relied on said representations to his detriment by taking intermittent leave under the FMLA.

39. Defendant, after Plaintiff had taken the leave, attempted to assess points as a result of said leave, asserting that Plaintiff's FMLA leave did not qualify as leave under the FMLA.

40. Defendant is promissorily and/or equitably estopped from denying that Plaintiff was entitled to FMLA leave and from assessing points against Plaintiff as a result of said leave.

41. As a result, Defendant wrongfully discharged Plaintiff by terminating him in contravention of the representations regarding the availability of FMLA leave.

42. As a result, Plaintiff has sustained damages as set forth above.

WHEREFORE, Plaintiff demands judgment as follows:

A. For actual and liquidated damages under the FMLA;

B. For actual and compensatory damages under the ADA and under Indiana law;

C. For the costs of this action under the FMLA, the ADA and Indiana law;

D. For attorney's fees under the FMLA and ADA;

E. For equitable relief, including front pay and/or reinstatement; and

F. For any and all other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ C. Ed Massey
C. Ed Massey
Blankenship Massey & Steelman, PLLC
504 Erlanger Road
Erlanger, KY 41018
859-426-9000
859-426-9001 (Fax)
cedmassey@nkylawyers.com

## JURY DEMAND

Now comes the Plaintiff and hereby demands a trial by jury.

_____
C. Ed Massey